IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DONALD WHANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. _____ |
| ) | |
| BRENDA JORDAN and BRENDA JORDAN ) | |
| LAW OFFICE LLC, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Donald Whann, by and through undersigned counsel, for his causes of action against Defendants Brenda Jordan and Brenda Jordan Law Office LLC, states and alleges as follows:

## PARTIES

1. Plaintiff Donald Whann (hereinafter "Plaintiff") is a citizen and resident of Arizona.

2. Defendant Brenda Jordan (hereinafter "Jordan") is a citizen and resident of Kansas.

3. Defendant Brenda Jordan Law Office LLC (hereinafter the "Law Office") is a Kansas Limited Liability Company with its principal place of business located at 404 Humboldt Street, Suite B, Manhattan, KS 66502.

4. At all times relevant, Jordan was an agent and/or employee of the Law Office.

5. At all times relevant, the Law Office, through its attorneys, employees, and agents, actual, apparent or otherwise, operated, managed, maintained, and controlled the Law Office, a Kansas based law firm that provided legal services in Kansas.

6. All actions and/or omissions of the Law Office's, employees, and agents, actual, apparent or otherwise, as described herein, were performed within the scope of their duties as attorneys, employees, and agents of the Law Office and the Law Office is vicariously liable for the acts and/or omissions of attorneys, employees, and agents, actual, apparent or otherwise.

7. At all times relevant, Jordan was an attorney licensed to practice law in Kansas.

8. At all times relevant, Jordan was in an attorney-client relationship with Plaintiff.

9. At all times relevant, Jordan was in a fiduciary relationship with Plaintiff.

## JURISDICTION AND VENUE

10. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00).

11. Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in Kansas and Defendants are subject to personal jurisdiction in Kansas.

## THE UNDERLYING LITIGATION

12. Plaintiff and Corinn Whann (hereinafter "Petitioner") were married on July 22, 1998, and had three children during the marriage: Avery Whann, male, born 2000; Hayden Whann, male, born 2003; and Alexandra Whann, female, born 2007

13. The parties were divorced on May 26, 2015.

14. As part of the Journal Entry of Judgment and Decree of Absolute Divorce, the Court incorporated by reference and approved the terms and provisions of the parties' Separation, Property Settlement, and Child Custody Agreement dated May 18, 2015, which included the following relevant provisions:

    A. The court ordered Plaintiff to pay to Petitioner $1,757.00 per month in child support for the parties' three minor children in Petitioner's primary residential care. Child support was to continue until (1) the death of the child; (2) the attainment of the child's majority, or June 1 of the school year during which the child becomes eighteen (18) years of age, if the child is still attending high school; or (3) the marriage of the child.

    B. Petitioner was awarded a percentage of Plaintiff's disposable retired military pay, to be computed by multiplying 50% times a fraction, the number of which is 186 months of marriage during Plaintiff's military service, divided by Plaintiff's total number of months of creditable military service. Plaintiff was also ordered to cooperate with Petitioner in her attempt to complete forms necessary to effectuate direct payment of the retirement benefits.

15. After the divorce, Petitioner moved to Meno Park, California but did not take the children despite having residential custody. Instead, all three children lived with Plaintiff in Kansas.

16. In 2016, because Plaintiff was the sole provider for the children and all lived with him, he claimed them as dependents on his 2015 taxes.

17. On August 31, 2016, Plaintiff retired from the U.S. Army and moved to Arizona with the children.

18. Thereafter the parties reevaluated residential custody and allowed the children to decide where to live. Alexandra chose to live with Petitioner in California. Avery and Hayden continued living with Plaintiff in Arizona.

19. On September 12, 2016, Hayden Whann passed away unexpectedly in Arizona.

20. Plaintiff and Avery then moved to California where Plaintiff and Petitioner lived together as co-parents sharing expenses and raising the children for the next seven years.

21. From October 2017 through December 2023, Plaintiff provided over $252,966.91 in financial support for Avery and Alexandra, which included college expenses, health insurance premiums, rent, food, utilities and clothing.

22. On May 3, 2018, Avery Whann turned 18.

23. In August of 2019, Kansas child support services notified Plaintiff he was in arrears for child support and directed him to send a letter to the judge about the arrears, giving Plaintiff step by step instructions on what to provide the court.

24. In response, on December 19, 2019, the parties jointly filed with the court a document dated August 27, 2019 entitled, "Past Due Support Case No: 2015-DM-000064." The document stated that the parties had reconciled, lived together, and that one of their remaining children resided with them. They explained that Plaintiff had retained custody after the divorce and that they had been living together and raising the children together since 2017. The letter concludes:

>*It is the agreement of both parties that all financial obligations are met, have been met and anything indicating otherwise is incorrect. We consider all matter of this case closed.* (Emphasis added).

25. After receipt of the parties' letter, the court included the document in the court's file noting it was a "satisfaction agreement." The court did not set the matter for a hearing.

26. On April 26, 2024, nine years after their divorce, Petitioner filed a Motion to Enforce seeking to enforce the parties' Property Settlement Agreement and requested a portion of Plaintiff's military retirement benefits and nine years of back child support for all three children even though Avery was 23; Hayden had passed away eight years earlier; and Alexandra was turning 18 in two weeks on March 10, 2025.

27. From the date of the divorce, May 26, 2015, through April 25, 2024, Petitioner never sought any part Plaintiff's military retirement benefits nor did she seek to enforce the court's child support order because Plaintiff had always supported his children financially and emotionally.

28. On May 9, 2024, Plaintiff and Jordan entered into a Legal Services Fee Agreement whereby Plaintiff agreed to pay Jordan $450.00 per hour and Jordan agreed to represent Plaintiff's "best interests" in his "post-divorce motions in Riley County, Kansas" in the "matter of Whann, RL2015DM000064."

29. On May 24, 2024, Jordan filed a "RESPONSE/OBJECTION" to Petitioner's Motion to Enforce arguing only that the parties' August 27, 2019 letter filed with the court required denial of the Motion despite the fact that Kansas law prohibits parties to a divorce from agreeing to alter the amount of child support. *In re Marriage of Schoby,* 269 Kan. 114, 117, 4 P.3d 604 (2000).

5

30. Jordan did not contend the Motion to Enforce was barred by equitable estoppel, promissory estoppel, dormancy, laches, unclean hands, unjust enrichment, waiver or any other defense.

31. On June 4, 2024, the Kansas Department of Child and Family Services, as assignee of the Petitioner's child support rights, filed a motion for Plaintiff to pay his child support obligation through the Kansas Payment Center, and for the court to issue an income withholding order.

32. On June 10, 2024, the Court found as a matter of law the parties' August 27, 2019 letter to the court was not a legally binding modification of parties' Separation, Property Settlement and Child Custody Agreement. The court also ordered Plaintiff to comply with the Agreement and disclose to Petitioner the date of his discharge, his high-3 and his first retirement statement to enable Petitioner to collect a portion Plaintiff's military retirement benefits.

33. On August 6, 2024, Jordan filed a Motion to Modify and Set Aside Child Support Order and Arrearage. This filing was also based solely on the unenforceable August 27, 2019 letter filed with the court and was not supported by any citations to law, and Jordan neglected to file a child support worksheet with her Motion as required by Kansas law.

34. The court held an evidentiary hearing on the child support matters on December 12, 2024. Plaintiff and Petitioner, along with contract counsel for DCF were present.

35. In its Journal Entry of January 15, 2025, the court granted Petitioner's Motion to Enforce and ordered Plaintiff to make nine years of back child support payments totaling $105,420.00.

36. The court denied Plaintiff's Motion to Modify and Set Aside because Jordan cited no authority on which the court could retroactively modify his child support; the 2019 letter to the court had no effect on the court's decision.

37. This Judgment was reached even though Avery was 24; Hayden had been deceased for eight years; Petitioner was making $165,000.00 per year; she waited nine years to seek enforcement; she signed the December 19, 2019 letter stating all of Plaintiff's financial obligations were met; she never informed Plaintiff of the material change in her financial circumstances; all of which resulted in garnishment of Plaintiff's fixed income of military retirement and disability pay for $1,757.00 per month.

38. On February 15, 2025, the time for Plaintiff to appeal the trial court's Judgment expired.

39. Jordan did not tell Plaintiff about the Judgment until March 10, 2025.

40. On June 6, 2025, at Plaintiff's insistence, Jordan filed an untimely Motion for Reconsideration of the court's Judgment and for the first time raised equitable estoppel as a defense to Petitioner's Motion to Enforce.

41. On July 3, 2025, Jordan filed a motion to withdraw as counsel for Plaintiff.

42. On August 21, 2025, Plaintiff, having retained new counsel in an attempt to mitigate his damages, filed an Amended Motion to Reconsider and Relief from Judgment.

43. On September 18, 2025, the court denied Plaintiff's Motion for Reconsideration as untimely.

44. On October 1, 2025, the court issued an income withholding order garnishing Plaintiff's military retirement and disability pay for $1,757.00 per month, and beginning on February 1, 2026, Petitioner will begin collecting $1,130.33 from Plaintiff's military retirement benefits.

## KANSAS CHILD SUPPORT LAW

### Laches

45. In Kansas, when a party neglects to assert a right or claim for an unreasonable and unexplained length of time and the lapse of time and other circumstances cause prejudice to the adverse party, relief is denied on the grounds of laches.

46. Laches stems from the maxim that equity aids the vigilant and not those who slumber on their rights – the neglect to assert a right or claim which, taken together with the lapse of time and other circumstances causing prejudice to the adverse party, operates as a bar in a court of equity.

### Laches Applies in Child Support Cases

47. In *Clark v. Chipman,* 212 Kan. 259, 510 P.2d 1257 (1973), the Kansas Supreme Court held that where divorce was granted in July 1965 and divorced wife made no attempt until October 1971 (six years) to recover amounts which she claimed were due for child support, although she could have requested specific orders, her failure to act constituted laches and barred any recovery of child support payments.

48. In the case of *In the Matter of Marriage of Jones*, 22 Kan.App.2d 753, 921 P.2d 839 (1996), Mary A. Jones and William J. Jones were divorced on June 8, 1982. Two children, April and Sandra, were born of the marriage. The decree of divorce originally set William's child support obligation at $1,200 per month. That amount was stricken, and the sum of $1,800 per month was inserted and initialed by both parties. But William only paid $1,200 per month from the beginning. *Id. at* 754. Twelve years later, Mary filed a motion for revivor to collect the deficiency in support payments from William. At the time Mary filed this motion, April was 19 and Sandra was 12.

The court found that the doctrine of laches was an equitable principle designed to bar stale claims and that the legislature had not abrogated equitable remedies in child support cases. With respect to April, the adult daughter, the court ruled that Mary was guilty of laches and that it would be "wholly inequitable and inappropriate" for her to be able to recover back payments dating 12 years. *Id.*

49. In *McKee v. McKee,* 154 Kan. 340, 341, 118 P.2d 544 (1941), the child support was initially set at $70 per month in 1920. Later, in 1920, it was reduced to $60 per month by an order of the court. In 1921, the father began paying $50 per month under the assumption that a court order had been made reducing his payments. The mother accepted such payments for the next 19 years. She took no steps to enforce the payment of the $60 per month obligation. The child was no longer a minor at the time the mother was attempting to collect the deficiency. The court held laches was applicable and it would be "clearly inequitable" to permit the enforcement of bare legal rights, or where the delay in asserting rights has been wholly unreasonable.

50. In the case of *In re Marriage of Burton*, 29 Kan. App. 2d 449, 452-53, 28 P.3d 427 (2001), the court held that the doctrine of laches barred mother's claim to child support arrearage when she accepted some support by father for three years and the child for whom support was sought had reached age of majority. *See also, Strecker v. Wilkinson,* 220 Kan. 292, 293, 552 P.2d 979 (1976); *Peters v. Weber,* 175 Kan. 838, 267 P.2d 481 (1954).

51. Petitioner agreed to Plaintiff not paying child support by telling the court that all financial obligations had been satisfied and never seeking a portion of Plaintiff's military retirement or to enforce the child support order. While divorced parties cannot agree to alter child support, the existence of the 2019 letter and Petitioner's inaction demonstrates she acquiesced in Plaintiff's failure to make child support payments, a laches defense.

52. Laches made it inequitable to permit the enforcement of Petitioner's legal rights where the delay in asserting these rights was wholly unreasonable, self-inflicted and prejudicial to Plaintiff, who already paid to raise his kids.

## Kansas Child Support Guidelines

53. Prior to filing her Motion to Enforce, Petitioner made $165,000.00 per year and had been making materially more money than Plaintiff for several years, but she never notified Plaintiff of the material change in her financial circumstances which directly affected what Plaintiff was required to pay in child support as well as any arrearage that might exist.

54. If Jordan had raised Petitioner's failure to inform Plaintiff of the material change in her financial circumstances (because the change in circumstances was so

substantial), the court had the discretion to reduce any arrearage to zero and deny Petitioner of any relief for child support.

55. Plaintiff raised his children. All three of them. He provided financial support, emotional support, education and met their needs. He discharged his duties to his children and the state of Kansas by being financially and morally responsible, no state funds were used to raise his children.

56. Because Avery was an adult when Petitioner filed her Motion to Enforce, Petitioner was not entitled to an arrearage for him. Likewise, Petitioner was not entitled to an arrearage for Hayden because he passed away eight years before she filed her Motion.

## KANSAS JUDGMENT LAW

### Dormancy of Divorce Judgments

57. The Kansas dormancy statute, K.S.A. § 60-2403, governs when a judgment becomes dormant and establishes the circumstances under which a district court must release the judgment of record.

58. A district court's division of a party's retirement account in a divorce decree constitutes a judgment subject to dormancy under K.S.A. § 60-2403 and the division qualifies as a final determination of the parties' interests in the marital estate.

59. The parties' Divorce Decree of May 26, 2015 represented a final judgment with regard to Petitioner's interest in Plaintiff's retirement benefits.

60. Pursuant to K.S.A. § 60-2403, the retirement benefits order contained in the Divorce Decree became extinguishable and unenforceable because for over seven

years Petitioner never renewed the judgment nor sought to revive the judgment within two years of it becoming dormant.

61. If Jordan had notified the court that Petitioner's claim to Plaintiff's retirement benefits was extinguished and unenforceable, Plaintiff would not have been required to pay Petitioner $1,130.33 per month from his retirement benefits.

## **COUNT I – LEGAL MALPRACTICE**

Plaintiff, for Count I of his cause of action against Defendants, states and alleges as follows:

62. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 61 of this Complaint as though fully set forth herein.

63. Jordan, in performing legal services for Plaintiff, had a duty to use that degree of learning, skill and care that a competent lawyer would use in the same or similar circumstances.

64. Jordan breached her legal duty to Plaintiff and was careless and negligent in her representation of Plaintiff in several material respects including but not limited to the following:

    A. Failing to know and understand Kansas child support law;

    B. Failing to know and understand Kansas marital property law;

    C. Failing to know and understand Kansas judgment law;

    D. Failing to know and understand the doctrine of laches;

    E. Failing to conduct legal research;

      F.     Failing to assert laches, equitable estoppel, promissory estoppel, unclean hands, unjust enrichment and waiver as defenses to Petitioner's Motion to Enforce;

      G.     Failing to oppose Petitioner's request for retirement benefits;

      H.     Failing to cite any legal authority in opposition to Petitioner's Motion to Enforce;

      I.     Failing to cite any legal authority in support of Plaintiff's Motion to Modify and Set Aside Child Support Order and Arrearage;

      J.     Failing to seek sanctions against Petitioner for failing to notify Plaintiff of her material change in financial circumstances;

      K.     Failing to object to court's excessive income withholding order;

      L.     Failing to timely notify Plaintiff of the court's January 15, 2025 Judgment;

      M.     Failing to challenge the court's subject matter jurisdiction;

      N.     Failing to challenge the court's personal jurisdiction over Plaintiff; and

      O.     Failing to timely appeal the court's January 15, 2025 Judgment.

65.    As a direct and proximate result of Jordan's negligence and legal malpractice, Plaintiff sustained injuries and damages.

66.    But for Jordan's negligence and legal malpractice, Petitioner's Motion to Enforce would have been denied in whole and Plaintiff would not have been ordered to pay a $105,420.00 Judgment nor would Petitioner have been entitled to any of his retirement benefits.

WHEREFORE, Plaintiff prays for Judgment on Count I of his claim against Defendants for a sum in excess of Seventy-Five Thousand Dollars ($75,000.00); for reimbursement and/or disgorgement of all fees and costs paid to Defendants; for his costs and expenses in attempting to mitigate his damages; for his costs and expenses bringing this action; and for such other relief as he may be entitled to by law or as the Court deems just and proper.

## **COUNT II – BREACH OF FIDUCIARY DUTY**

Plaintiff, for Count II of his cause of action against Defendants, states and alleges as follows:

67. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 66 of this Complaint as though fully set forth herein.

68. In representing and providing legal services and legal advice to Plaintiff, Jordan had a fiduciary duty to act in good faith and with due regard to Plaintiff' interests and was prohibited from placing her interests ahead of Plaintiff's interests.

69. Jordan breached her fiduciary duties to Plaintiff in several material respects including but not limited to the following:

    A.    By placing her own financial interests ahead of Plaintiff and acting in her own self-interests;

    B.    By churning Plaintiff' file to generate income without actually performing necessary legal services;

    C.    By billing Plaintiff for unnecessary work; and

    D.    By billing Plaintiff for time in excess of the actual time spent on work performed for Plaintiff (overbilling).

70. The legal fees Jordan charged Plaintiff are subject to reimbursement or disgorgement.

71. As a direct and proximate result of Jordan's breach of her fiduciary duties to Plaintiff, Plaintiff sustained economic damages.

WHEREFORE, Plaintiff prays for Judgment on Count II of his claim against Defendants for a sum in excess of Seventy-Five Thousand Dollars ($75,000.00); for reimbursement and/or disgorgement of all fees and costs paid to Defendants; for his costs and expenses in attempting to mitigate his damages; for his costs and expenses bringing this action; and for such other relief as he may be entitled to by law or as the Court deems just and proper.

### **COUNT III – VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**

Plaintiff, for Count III of his cause of action against Defendants, states and alleges as follows:

72. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 71 of this Complaint as though fully set forth herein.

73. Plaintiff is a "consumer" within the meaning of the Kansas Consumer Protection Act, K.S.A. § 50-623, et seq. (hereinafter "KCPA").

74. Jordan is a "supplier" within the meaning of the KCPA.

75. The "services" Jordan provided to Plaintiff are encompassed within the meaning of the KCPA.

76. Jordan held herself out to Plaintiff as being an experienced lawyer knowledgeable about Kansas divorce law including claims for back child support and retirement benefits.

77. Jordan violated the KCPA and engaged in deceptive acts and practices in connection with a consumer transaction which include but are not limited to the following:

    A.    Failing to inform Plaintiff that she did not know or understand how to oppose Petitioner's Motion to Enforce; and

    B.    Misleading Plaintiff about her experience, expertise and ability to meaningfully oppose Plaintiff's claims and preserve for appeal any adverse rulings.

78. The aforesaid acts and omissions constitute deceptive acts and practices in violation of the KCPA.

79. As a direct and proximate result of Jordan's violations of the KCPA, Plaintiff suffered damages.

WHEREFORE, plaintiff prays for Judgment on Count III of his claim against Defendants for a sum to be determined by the Court in accordance with the KCPA; for his costs, expenses and attorneys' fees in bringing this action as provided for in the KCPA; for civil penalties as provided for in the KCPA; and for such other relief as plaintiff may be entitled to by law or as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury in the above-captioned case.

        HAMILTON LAW FIRM LLC

        By: /s/Patrick A. Hamilton
        Patrick A. Hamilton, KS Bar No. 16154
        8700 Monrovia, Suite 310
        Lenexa, KS 66215
        PHONE: (913) 647-7512
        patrick@lenexalaw.com
        ATTORNEYS FOR PLAINTIFF